argued, which is 22-2007, Eric Johnson v. Patrick Griffith. Good morning, Your Honor. Is Paul Skip Blaser of Science Council for Eric Johnson in this state habeas case? Good morning. The state trial court's rulings are two-part, permitting inadmissible hearsay evidence of Mr. Johnson's motive to kill, and two, denying a missing witness instruction as to a witness with the same motive to kill who had placed Mr. Johnson in the decedent's apartment just before her body was found, considered together were not harmless errors. Starting with the premise that the district court found error, I'm going to dive right into harmless error analysis on this. And starting with the lack of a missing witness instruction, this allowed the prosecution to place the contents of Thomas Livingston's alleged phone call with the victim, asthma, into evidence through his not-10-year-old daughter, who was 7 years old at the time. Neither Livingston nor her older brother were called. They used the youngest, most vulnerable witness for this purpose. The evidence that she brought forward was- What is the reasonable doubt that we're looking for here? Is it that Livingston really did spend the afternoon with the children, but then after dropping them off with the aunts, went back to the apartment, killed Ms. Johnson, and then got away before the aunts got over there and ran into the defendant? Or is the theory that he never- the alibi that he has is concocted and that at least one child, and maybe both, conspired with their father to provide him with a false alibi, and actually he did something else with the kids, dropped them somewhere else, and committed a murder earlier in the day? I mean, it's a little difficult to see what the issue really is that would make it a plausible argument that there's a reasonable doubt. There may be all kinds of reasonable doubt about whether Mr. Johnson did it, but whether Mr. Livingston did it is maybe a harder sell to adjourn. I think, Your Honor, the difficulty you're having is the lack of cross-examination to flesh out any of that information. That was the problem that the people, the state of New York, avoided by having Najiah testify instead of Mr. Livingston, which is why we say it's a confrontation clause problem, even though Livingston himself did not testify. There are cases- It's not a confrontation clause problem, I thought it's a jury instruction problem. It is, but it's a jury instruction that would have mitigated the confrontation clause difficulty that occurred because of the creative way this case was presented. It's not a confrontation clause problem. Confrontation clause problem is when you have the evidence, a testimonial statement admitted into evidence, but I didn't think there were any testimonial statements. There certainly were, Your Honor. They were- When he talked to his daughter, he was intending to testify? She gave his statements to the jury. Right, but the hearsay statement is not what she said. The hearsay statement is what she said my dad said, right? Right. And the question is, was that, the hearsay statement, the thing that's in the bubble, my dad said that, was he making a testimonial statement, right? That's what's got to be testimonial under Crawford. And you're saying that when he talked to his daughter in the car driving her to school, he was thinking, yeah, this is, I want this to be introduced into court someday, or to be the equivalent of an affidavit. No, what I'm saying- That's what I'm saying. Isn't that the test under Crawford? No, I'm saying not, because what happened here is that the people introduced that evidence into the case through Najiah, the daughter. And so Livingston's very statements were in evidence. You're saying that whenever a witness appears in court and gives a hearsay statement, everything in the hearsay is rendered testimonial under Crawford? Only in a case where the missing witness instruction is not given. That's- How does that- They're wrapped together. It's a missing witness instruction error, sorry. Let's keep ourselves focused on the Supreme Court's test in Crawford. That things have to be testimonial statements to be a Crawford problem. Right. Meaning a Sixth Amendment problem. Are we in agreement, and maybe we're not, that the question is whether what Livingston said to his daughter had to be testimonial or not for Crawford to kick in or not. I agree that that's true. Okay. So then the question is, and we measure whether it's a testimonial statement at the time the statement was made, correct? Right. Not when it's repeated. Except that there are cases out of the First Circuit that I would ask your honor to take a look at, page four of our brief, that establishes that providing evidence at trial is also testimonial. Well, of course, with respect to the witness. So that means you can cross-examine the ten-year-old as much as, you have to have an opportunity to fairly cross-examine the ten-year-old. Right. But the question is, did you need a Sixth Amendment opportunity to cross-examine the hearsay declarant, who in this case is Livingston? But we measure the testimonial quality of his statement at the time he made it. And when he's sitting in a car driving his daughter to and from school, that's where I don't understand your argument. Okay. If you're making it, that at the time he said it, it was testimonial. No, I'm not saying that. And I don't understand how you get into Crawford land. By, through the missing witness instruction. By avoiding calling him to testify. And denying the defense, the missing witness instruction that allows the jury to discount the evidence that he would have given because he was available and was not brought into the case. This is a very interesting and creative argument. But suppose I agree with you that this is a good argument and that should be the law. For habeas purposes, don't you have the further hurdle to answer the next question, which is where is the Supreme Court case law that says anything at all about missing witness instructions? Or that says anything broader than what Judge Nardini was talking about in terms of what is testimonial and what isn't? It's, I concede that we need to show that there was a fundamental error here. Yeah, but you need to show that it's a fundamental error under the law of the United States as enunciated by the Supreme Court. Because you're in 2254. No, I understand. You've got to show that they unreasonably applied. The Supreme Court cases say that jury instructions can rise to the level of a due process violation. So you're saying you're putting together Crawford. And you're putting together case law about 14th Amendment violations by just fundamental error deriving from jury instructions. That's right. There's two different- Why is it, and I guess this is the next question, is why is it that you're not linking these otherwise completely disparate lines of case law is not therefore a novel rule that you would be asking us to adopt in the first instance? Much less some novel rule that the Supreme Court has never made that link. Well, it's not as novel as it sounds, Your Honor, because at base what we have is we have a missing witness instruction claim. As I said, Cup v Naughton, Kuhl, Henderson, these cases say that fundamental errors with respect to evidentiary errors of the state court or instruction errors can rise to the level of a fundamental error. In this case, it's a combination of the missing witness instruction being denied and the evidence being elicited by hearsay and the other evidence of abuse that shouldn't have come in. All of those things wrapped together, which he argued in his petition and the state council argued as well, when you consider all those together, you have fundamental error and you have fundamental harmless error. The only other thing I want to say is that there was not overwhelming evidence in this case, other than all of that evidence I just mentioned. There was someone saying, help me, this man is killing me. We don't know whether that was contemporaneous with the death or not. We have his flight to Pennsylvania, which obviously he was seen at the scene by various members of his family. He could well have agreed, I'm in trouble here, I'm getting out of here, even if he didn't do it. I did something stupid. Did he break into the house and that was stupid because he was seen fiddling with the door? That's a vague thing, and we don't know- He was seen by the daughter, not his daughter, her daughter, going into the apartment, pushing his way into the apartment earlier in the afternoon. He's still there in the building, coming down from where she was. Still, okay, still as an inference. He is there again when spotted by the aunts and he's referencing something that happened upstairs that he did that was stupid. That's the, you know, he has an alibi for where he is the rest of the day and Johnson does not. Those are all, that's evidence against him. Is it overwhelming when, in fact, the other evidence that did come in was his abuse of her, which wasn't in the case otherwise, except for the hearsay error. And Livingston's statements about him being there in between those two times. Okay. I think we have your argument. Thank you very much. Why don't we hear from counsel for the appellee, Attorney O'Boyle, please. May it please the court, good morning, your honors. For the respondent appellee, Assistant District Attorney Danielle O'Boyle from the office of Melinda Katz, the Queens County District Attorney. Turning first to the issue of the missing witness charge, that issue simply does not implicate the confrontation clause. And importantly, that Sixth Amendment claim is in fact unexhausted and therefore procedurally barred. And there's no basis for this court to excuse that on the basis of ineffective assistance of counsel. Even if the court were to accept the unique argument that is now posited by counsel on appeal, that somehow this does rise to the level of a confrontation clause error. There's no way to say reasonably that defense counsel should have objected on that specific ground at the time he requested a missing witness charge. And importantly, he did in fact request a missing witness charge for Mr. Livingston. So certainly for the first prong of Strickland, counsel should be deemed to have done what he was supposed to do in requesting the charge. And then appellate counsel would also fail on the prejudice prong of Strickland. Because even if trial counsel had alerted the trial court to this unusual confrontation claim, there's no basis to believe that the trial court would have ruled any differently. And certainly because the appellate division found that any error with respect to denying the request for that charge was harmless, petitioner cannot show that the outcome would have been any different. Also, just to briefly explain the issue here that appellate counsel raises with respect to the prosecution attempting to shield Mr. Livingston from prosecution. I think it's important to note, as Judge Nardini mentioned earlier, there's very limited testimony at all about these out of court statements by Mr. Livingston. And to the extent there is testimony about that, those statements are not testimonial. They were absolutely not made for the primary purpose of use at trial. They're really logistical in nature. And the key piece of testimony that comes in about that car ride is that Najia, the victim's daughter, testified that she was the one who told her father that it was in fact the petitioner who had been in the apartment previously. It's not Mr. Livingston who puts the petitioner there, it's Najia. And to the extent they're discussing where they're going from there, it's really a logistical conversation about not bringing the children home and going to the apartment of the petitioner's family members. As for the evidence that accounts for Mr. Livingston's whereabouts, there's not only the testimony of the victim's daughter, Najia, that accounts for him from the moment she leaves her mother's apartment after petitioner barged in. She's with him at the school, she's with him in the car. And she's with him when they go to the apartment of Shawna and Gloria Tippins. Then we have both of the Tippins' to corroborate that testimony, as well as video surveillance that places him walking into that apartment building at 8, 10 PM, having a conversation and walking out at 8, 16 PM. And Shawna and Gloria Tippins are seen walking into the victim's apartment building at 8, 19 PM. We know from the testimony of the downstairs neighbor that it was shortly after 8 PM that she heard the screams from above her apartment of, help me, help me, he's killing me. So we have a very narrow window here of when the murder occurred. And Mr. Livingston's whereabouts are really well accounted for for that entire period. Just to briefly address the issue of the uncharged crime evidence that was admitted. This did come in under appropriate background exceptions and an exception to present that evidence to establish the petitioner's motive, intent, and identity as the killer. And in this circumstantial evidence case, that was absolutely relevant and probative. But even if we were to address just the harmless argument that petitioner focuses on here, certainly we're dealing with a situation where the state court is entitled to deference because the appellate division explicitly ruled on the harmless error analysis. And then we have, separate from that, that the petitioner would have to meet his burden under Brecht to show that this was a substantial and injurious error, and he simply cannot do that. Based upon all of the evidence I just discussed, even if we take out, and if we consider the issue of the missing witness charge, and we take out any of the hearsay statements concerning the prior abuse, even though they were certainly probative, there was ample evidence showing that it was in fact the petitioner who committed this murder based upon the statements he made as he fled from the apartment, where he was seen pointing up, where the victim was laying dying in a pool of her own blood, that he fled to Pennsylvania, was found hiding under a bed weeks later, and gave a statement that was undoubtedly false, and showed his consciousness of guilt to the authorities. If your honors have no further questions, I'll rely on my brief. Thank you very much. Thank you very much for both counsel, we appreciate your arguments today. We will take the case under advisement.